HIRAM GÓMEZ, Plaintiff and Appellee, *v.* LUIS BRAVO, AMERICAN COLONIAL BANK and ROYAL BANK OF CANADA, Defendants.—AMERICAN COLONIAL BANK, Appellant.

No. 3298. Argued June 18, 1924.—Decided April 20, 1925.

1. CONTRACT—EVIDENCE—DOCUMENTARY EVIDENCE.—A deed whose execution is admitted by the defendant is admissible in evidence to show that the parties are bound by the contract set forth therein.

2. ID.—ID.—ID.—The receipt of money for expenses of cultivating a property having been acknowledged in a public deed, checks are admissible in evidence to show delivery of the money whose receipt is so acknowledged.

3. ID.—ID.—AGRICULTURAL LOAN CONTRACT — PREFERENCE. — Neither under the Mortgage Law nor under Act No. 37 of 1910 concerning advances for agricultural purposes is it necessary to prove, in order that an agricultural loan may have a preferred character, that the money advanced was used in improving the property.

4. ID.—ID.—ID.—SIMULATION.—The fact that a person having an agricultural credit may also have a mortgage on the same property and that there are other mortgages which fell due prior to his mortgage is not proof that the agricultural loan contract was simulated.

5. ID.—ID.—FRAUD.—Fraud must be proved by incontestable facts, or at least by a preponderance of evidence, for it can not be established by presumption, conjecture or suspicion.

District Court of Mayagüez, Angel Acosta, J. Judgment for the
plaintiff in an action on a contract. *Affirmed.*

*Joaquín Vendrell* for the appellant. *José Sabater* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The American Colonial Bank brought a personal action
against Luis Bravo and another to recover the sum of
$3,800 due on a promissory note, and to secure the effect-
iveness of the judgment attached several of their properties,
including the Constancia plantation, belonging to Luis Bravo,
and its crops from 1921 to 1925. The Royal Bank of Canada
attached the same property and crops in another action
against Bravo and another to recover also on a personal
obligation.

In view of these facts Hiram Gómez brought against
both banks and against Luis Bravo and his wife the action
which originated this appeal, praying for judgment to the
effect that an agricultural loan contract entered into with
Luis Bravo had preference over the claims of the said banks
as to recovery out of the said crops of the amount ad-
vanced by him for the cultivation of the said property, the
crops being pledged to secure payment of the sum of $8,000
by a deed dated August 8, 1921.

The Royal Bank of Canada did not defend, but the
American Colonial Bank opposed the complaint and as a
counter-claim prayed that the said deed be held simulated
and fraudulent.

Luis Bravo and his wife did not answer the complaint
and their default was entered. After a trial judgment was
rendered sustaining the complaint and dismissing the coun-
ter-complaint of the American Colonial Bank, which took
the present appeal.

The plaintiff introduced at the trial deed No. 36 of
August 8, 1921, wherein the Bravo spouses, as owners of
the Constancia plantation, acknowledged having received
from Hiram Gómez prior to that date the sums of $7,000

and $1,000 for the cultivation and improvement of the said plantation and agreed to repay the said $8,000 with interest at the rate of 10 per cent annually between the date of the deed and the 31st of December, 1923, creating a lien to secure the payment of said sum on all the coffee that the said property should produce in the crops of 1921, 1922 and 1923. It was agreed also that in case the whole amount of the loan with interest should not have been fully paid at maturity the lien would extend to the subsequent crops of coffee produced on the said property until full settlement of the debt. The deed shows that it was recorded in the registry of agricultural contracts on August 16, 1921.

The plaintiff testified that since February, 1917, he had been lending money to Bravo for the cultivation and improvement of his said property until the loans aggregated the sum of $11,185.81; that when Bravo asked him for more money in August of 1921 the witness requested him to execute a deed of agricultural loan for $8,000, which did not cover his whole debt, but which he considered sufficient inasmuch as in his opinion the property was good for the whole of his credit; that each and all of the amounts advanced to Bravo were for the improvement and cultivation of the said property and its products were increased considerably by the use of the money advanced by him; that the checks drawn in favor of third persons were so drawn on Bravo's instructions and in payment of expenses of the plantation; that after the execution of the deed he gave Bravo money on three occasions totaling $700 for the harvesting and transportation of the coffee crop of 1921; that Bravo delivered that crop to him and it was sold for the sum of $3,008.25, the balance of which, after deducting the said $700, or $2,308.25, he credited to Bravo's account; that on this date, November 8, 1923, the balance in his favor is $5,691.75. He also testified that he had paid some bills against the plantation.

For the purpose of proving that before the execution of the deed he had advanced to Bravo more than the $7,000, which he acknowledged, and also the delivery of the other $1,000 the plaintiff offered some checks drawn by him from the 3rd of February, 1917, to the 8th of August, 1921, aggregating about $15,000. Some of them were payable to the order of Luis Bravo, others to bearer and others to third persons for small sums. He also introduced in evidence his book of accounts containing the financing account of Bravo from February 3, 1917, to April 9, 1923, showing a balance of $5,680.35 in his favor.

The appellant alleges that deed No. 36 of August 8, 1921, should not have been admitted in evidence without first showing the delivery of the money; that the checks should not have been admitted in evidence, because some of them bore very remote dates; others were made payable to bearer, and others were made payable to third persons; and all because it does not appear that they were given for financing the cultivation of the property.

[1, 2] The deed was admissible as evidence that Hiram Gómez and the Bravo spouses entered into the said contract, for it is a public instrument, and also because in the answer and counter-complaint the appellant admitted that it had been executed, although alleging that it had been simulated and was fraudulent. The checks offered to show that the plaintiff had delivered to Bravo before signing the deed the $7,000 of the debt therein acknowledged and more also were admissible for the reason that Hiram Gómez testified that the sums represented by them were delivered to Bravo for the cultivation and improvement of his property and the court believed his testimony; therefore, they are proof of the previous existence of the financing account and of the fact that on the date of the deed Bravo owed Gómez for money so advanced the $7,000 of the acknowledged debt and more. The checks made payable to bearer and to third

persons were admissible because Gómez testified that they were given to Bravo and were drawn in favor of third persons on Bravo's instructions for the payment of expenses of the property.

The real issue in this case turns on the following question of law.

[3] The appellant contends that in order that a loan may have the character of an agricultural loan, with the preference given it by law, it is not sufficient to prove that money has been delivered, but that in order that it may have such preference it is necessary to prove also that the money delivered was expended in improvements on the property.

In this case it has been proved that Hiram Gómez delivered the loans to Bravo for the improvement and cultivation of the Constancia plantation, but there is no evidence tending to show that every dollar that he advanced was used by the owner of the property in paying the laborers and for materials, etc., for the improvement of the property, but we are of the opinion that Gómez was not bound to produce such evidence in order to show that his credit was an agricultural loan, for although Barrachina and Morell, cited by the appellant, commenting on the agricultural loans referred to in the Mortgage Law, contend that such evidence is necessary, we concur in the view of Galindo and Escosura that although at common law the agricultural loan exists only when the money is expended in improving the property, yet the Mortgage Law has departed from this rule in giving preference to agricultural loans, considering as such not those expended on the property, but those received for that purpose, inasmuch as it gives the privilege to the recorded credit which consists of the sums advanced and not those expended. Article 59 of the Mortgage Law (Compilation of 1911, sec. 6743) provides that an agricultural creditor may demand the entry

of a cautionary notice against the estate for the amounts which he may have *advanced* at one time or in several instalments. It is true that the money is given to be expended in the improvement of the property, but if a contrary view were adopted the owners of real property would be deprived of the facilities offered by agricultural loans for their improvement, inasmuch as the difficulties which in practice the creditors would encounter in proving that every dollar advanced for cultivation was actually used by the owner of the property in its improvement would frighten capital away or compel the creditor to intervene directly or perhaps exclusively in the use of his money in order to be able to prove, in case of opposition to his credit, that the amount was expended in improving the property, thus putting the owners of the properties in a ridiculous and humiliating situation. For this reason we understand that the established fact that the money was advanced for the cultivation of a property and that the loan was recorded in the registry creates a preference as against other creditors.

Up to this point we have considered this question in the light of the Mortgage Law, notwithstanding the fact that the contract in this case is governed by Act No. 37 of 1910 (Laws of 1910, page 119) to provide for contracts of advances for agricultural purposes and grinding of cane, and for other purposes, because of the similarity between the two laws. Section 1 of Act No. 37 provides that a contract of advances for agricultural purposes is one under which one of the parties thereto *turns over* and the other party receives, subject to reimbursement, a certain amount of money in cash or its equivalent, whether in a lump sum or in successive instalments, with which to meet the expenses of administration, maintenance, cultivation or improvement of rural properties, the products of said properties being answerable and liable for the repayments of the amounts so *received*, with the interest agreed to thereon.

Section 2 provides that the payments of the amounts received by the landholder shall be stipulated to be either in cash or in the kind of product grown on the property for which the advance is made, within such terms as may be fixed by the contracting parties. From the foregoing it may be seen that an agricultural loan contract arises from the delivery of cash or its equivalent for the cultivation of the property and not from the use of such cash or equivalent for that purpose; therefore, when a contract of that kind is recorded in the registry created by the said act and the delivery of the money is established the loan enjoys the preference conferred upon it by section 4 of the Act over all other subsequent credits of whatever kind, with the exception of delinquent taxes, on the crops of the property for which the money is advanced, produced during the term of the contract, and until the creditor has received the whole amount of his loan.

[4, 5] The appellant also alleges that the court below erred in not finding that the agricultural loan contract was simulated and false; but the fact that Hiram Gómez held a mortgage on the property for the sum of $8,000 and that there were other mortgages which had matured prior to his mortgage is not sufficient to show that the contract is simulated, because its purpose was to allow the appellee to recover the amount of his mortgage in preference to other senior mortgagees. Not only must fraud be proved by incontestable facts, or at least by a preponderance of evidence, for the existence of fraud can not be left to presumption or suspicion, as held in *Arruza* v. *Laugier,* 14 P. R.R. 24, but in the present case it has been proved that from 1917 to the 8th of August, 1921, the appellee had lent Bravo several sums aggregating more than $14,000, the account showing a balance of over $11,000 on the latter date.

In view of the foregoing we consider that the judgment of the court below that the appellant bank pay the cost is correct, and it is affirmed.